# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X

TONI BRENNAN,

Index No.:

. Plaintiff,

VERIFIED COMPLAINT

against-

INTUIT INC., and SALLY REAGAN, THOMAS HALE,

CHARLES TITUS, and TENE BROOMFIELD as

agents of INTUIT INC.

Defendants.

------------------------------------------------------------X

PRELIMINARY STATEMENT

1. Plaintiff Toni Brennan ("Plaintiff") is a New York-licensed attorney who brings this action to redress unlawful retaliation, interference with licensed professional duties, and retaliatory denial of advancement after she reported and refused to participate in conduct violating federal and New York tax law and governing professional regulations.

2. Defendants responded to Plaintiff's protected disclosures by obstructing her ability to perform licensed duties, barring her from advancement and full-time roles for which she was qualified and recommended, and formally declaring that she would not be permitted to advance within the organization.

3. This action arises from Defendants' retaliatory conduct and failure to correct known regulatory violations after receiving detailed written compliance memoranda from Plaintiff.

4. Defendants SALLY REAGAN, THOMAS HALE, CHARLES TITUS and TENE BROOMFIELD were each acting within the scope of their employment with Intuit and as Intuit's agents.

5. Intuit is directly liable for their conduct and is also vicariously liable under the doctrine of respondeat superior.

6. Intuit is responsible for their actions and their failure to correct the violations.

PARTIES, JURISDICTION, AND VENUE

7. This Court has jurisdiction pursuant to CPLR Sections 301 and 302(a)(1), 302(a)(2)and New York Labor Law sec. 740

8. This Court also has personal jurisdiction over Intuit pursuant to CPLR sections 302(a)(1), 302(a)(2) because Intuit transacts business in New York State, including through its principal office, place of business in New York County, and because it regularly conducts substantial business and engages in continuous and systematic contacts within the State.

9. Venue is proper in New York County pursuant to CPLR § 503(a).

10. Plaintiff Toni Brennan is a resident of Suffolk County, New York, and has been anew York attorney in good standing since 2003.

11. Defendant Intuit Inc. ("Intuit") is a Delaware corporation authorized to do business in the State of New York and maintains its principal office place of business in New York County.

12. Defendant SALLY REAGAN was, at all relevant times, an employee and managerial agent of Intuit acting within the scope of her employment, under Intuit's direction and control, and for Intuit's benefit.

13. Defendant THOMAS HALE was, at all relevant times, an employee and corporate compliance officer or managerial agent of Intuit acting within the scope of his employment, under Intuit's direction and control, and for Intuit's benefit.

14. Defendant CHARLES TITUS, at all relevant times, an employee and managerial agent of Intuit acting with in the scope of his employment, under Intuit's direction and control, and for Intuit's benefit.

15. Defendant TENE BROOMFIELD was, at all relevant times, an employee and managerial agent of Intuit acting within the scope of her employment, under Intuit's direction and control, and for Intuit's benefit.

16. Defendants SALLY REAGAN ,THOMAS HALE, CHARLES TITUS AND TENE

BROOMFIELD were employees, agents, and managerial representatives of Intuit acting within the scope of their employment and under Intuit's direction and control. Intuit is therefore vicariously liable for their conduct under the doctrine of respondeat superior.

17. This Court has jurisdiction over Defendants pursuant to CPLR § 301 and § 302(a)(2) and Labor Law sec. 740 because Defendants transacted business and committed tortious acts within New York State.

18. Venue is proper in New York County pursuant to CPLR § 503(a) because Intuit maintains its principal office in New York County and conducts substantial business in New York County.

FACTUAL ALLEGATIONS

19. Plaintiff was employed by Intuit in a role requiring her to maintain an active New York law license and comply with IRS Circular 230 and New York Tax Law.

20. Compliance with professional and statutory obligations was a material condition of Plaintiff's employment.

21. During her employment, on or about October 24,2025, Plaintiff identified and documented policies and directives that violated IRS Circular 230, including § 10.22, and applicable provisions of New York Tax Law governing due diligence and professional conduct.

22. On or about October 24, 205 at Plaintiff prepared and submitted written compliance memoranda to Intuit-management and compliance personnel detailing the specific laws, rules, and regulations being violated and proposing corrective measures.

23. On or about October 26, 2025 plaintiff reported Americans with Disabilities Act violations by Intuit to Thomas Hale, Intuit agent.

24. Plaintiff warned Defendants that failure to remedy these violations exposed clients, the public, and licensed professionals to regulatory and legal risk.

25. Plaintiff informed Defendants that the issue was not isolated and that similar conduct had occurred repeatedly over the prior two years, and violated client rights, and Intuit's ethical obligations to Intuit clients.

26. Plaintiff explained that managers and team leads had routinely provided-inaccurate or misleading guidance, pressured employees to act contrary to legal and ethical requirements, and created an environment of intimidation.

27. On or about October 24, 2025 Plaintiff documented these concerns in memos and summaries, outlining the systemic nature of the problem and proposing corrective measures.

28. On or about October 24, 2025 Plaintiff emphasized that the issue was likely to become a company wide compliance risk, including potential violations of IRS rules and New York Tax Law, unless it was addressed.

29. On or about October 19 2025 plaintiff articulated these complaints to Intuit's designated ethical compliance team

30. On or about October 19, 2025 plaintiff articulated these complaints to 2 Intuit members of management

30-A. On or October 26 plaintiff emailed a draft copy of the instant complaint to INTUIT CEO.

31. Plaintiff warned Defendants that the conduct she identified was harmful to the public and posed a substantial and specific risk to public safety, lawful tax administration, taxpayer protections, and the integrity of the tax system.

32. Plaintiff informed Defendants that, if they failed to correct the violations, she would be forced to pursue alternative remedies to protect the public interest, including reporting the violations to the appropriate regulatory authorities and pursuing all lawful means to ensure compliance.

33. Plaintiff explicitly stated that she would take such measures if Defendants did not correct the violations promptly, and Defendants understood that Plaintiff's protected disclosures were made to prevent ongoing public harm

33-A. Plaintiff provided Defendants with written notice of the unlawful practices described herein, identified the specific laws, rules, and regulations being violated, proposed corrective measures, and afforded Defendants a reasonable opportunity to cure the violations, which Defendants failed and refused to do. Alternatively, notice was not required because Defendants had actual knowledge of the violations, the violations were systematic and ongoing, and Plaintiff reasonably believed the conduct posed a substantial and specific risk to a lawful tax administration and the public.

34. Plaintiff also repeatedly offered to lead corrective initiatives, including a proposed compliance program to address the issues she identified, and communicated her willingness to take on leadership responsibilities to ensure compliance and prevent further violations.

35. Plaintiff was in her third year of employment with Intuit and had been offered an extension.

33. Plaintiff was fully qualified for advancement and full-time positions, had received positive performance metrics, and had been recommended for advancement by multiple managers.

34. Plaintiff applied for available positions through the internal job board and directly contacted managers and recruiters, but her applications and inquirie1s were ignored despite numerous open positions and managerial recommendations.

35. Plaintiff worked extensive hours at the request of Intuit, including periods of approximately ninety to one hundred hours per week, and during the final two weeks worked approximately one hundred thirty-six hours each week, in order to meet business needs and support the company's operations.

36. On or about October 19, 2025, Defendant SALLY REAGAN directed Plaintiff to disengage from a client tax return during the final filing stage while Plaintiff was actively providing professional services.

38. Defendant SALLY REAGAN then proactively logged Plaintiff out of the system herself, knowing Plaintiff was still engaged with the client, and notified Plaintiff by email that she had been logged off.

39. Defendant SALLY REAGAN .'s action removed Plaintiff from the client matter without warning and without providing a lawful or ethical basis for the interruption.

40. Defendant SALLY REAGAN 's directive obstructed Plaintiff's licensed professional duties and placed Plaintiff at risk of violating IRS Circular 230 and New York Tax Law.

41. Plaintiff objected and reiterated the applicable legal requirements governing licensed tax professionals.

42. Defendants SALLY REAGAN and CHARLES TITUS, escalated the compliance dispute through repeated electronic communications designed to interrupt Plaintiff's provision of professional services.

43. Plaintiff finished with the customer and then sent a private slack message to Defendant SALLY REAGAN informing her of the controlling law and provided the updated authority she needed to consider. Plaintiff advised Defendant a SALLY REAGAN to review the applicable IRS Circular 230 and statutory authority. Upon being corrected with the appropriate statutory rules, SALLY REAGAN immediately became angry and retaliated against Plaintiff by escalating the dispute by adding Plaintiff's manager and Defendant CHARLES TITIS to the chat message, intentionally damaging plaintiff's professional reputation. This was retaliatory.

44. Defendant agent SALLY REAGAN damaged plaintiff's professional reputation with clients by disengaging plaintiff from completing an active tax document on October 19, 2025.

45. Defendant SALLY REAGAN then communicated with Plaintiff only through the other managers, using the group communication to bully and intimidate Plaintiff for correcting her and for asserting the applicable legal requirements.

46. Plaintiff documented these incidents and submitted additional written compliance complaints

47. November–December 2025 – Hale's Retaliatory Conduct

48. Defendant THOMAS HALE acknowledged unfamiliarity with IRS Circular 230 and declined to investigate or correct the identified violations.

49. Defendant Inuit agent THOMAS HALE provided no solutions and incorrectly advised plaintiff she was to provide expert tax preparation not attorney services incorrectly suggesting the violations plaintiff articulated in plaintiff's October 24,2025 compliance memorandum were not relevant to tax preparation services and only applied to attorney services.

50. Defendant Inuit agent THOMAS HALE ignored that IRS circular 230 applies to all tax preparers attorneys and non attorney alike.

51. Defendant Inuit agent THOMAS HALE analysis ignores that plaintiff is a New York State licensed attorney.

52. Defendant Inuit agent THOMAS HALE analysis ignores that plaintiff's status as an attorney is a condition precedent to plaintiff's employment status with Intuit.

53. Defendant Inuit agent THOMAS HALE analysis ignores that maintenance of plaintiff's licenses attorney status is a condition of continued employment with Intuit.

54. Defendant Inuit agent THOMAS HALE analysis ignores that plaintiff has obligations to her engaged clients primary to any internal INTUIT rules.

55. Defendant Inuit agent THOMAS HALE analysis ignores that plaintiff has obligations to the IRS primary to any internal INTUIT rules

56. . Defendant Inuit agent THOMAS HALE analysis ignores that plaintiff has obligations to local tax authorities primary to any internal INTUIT rules.

57. Plaintiff provided Defendant THOMAS HALE with a detailed memo explaining the relevant IRS rules and their application to Intuit's practices, along with proposals for corrective measures.

58. Plaintiff repeatedly offered to lead the corrective initiative and sent multiple emails requesting assistance and follow-up.

59. Plaintiff disclosed to Defendant THOMAS HALE that the issues were not isolated, and that similar conduct and misleading guidance had occurred repeatedly over the prior two years.

60. Plaintiff informed Defendant THOMAS HALE that the issues were systemic and-created a compliance risk.

61. Defendant THOMAS HALE responded that Plaintiff's legal qualifications were irrelevant to her role, stated that the matter was out of scope, and indicated that Plaintiff would not be considered for advancement or full-time positions, despite Plaintiff's qualifications, performance, and managerial recommendations.

62. Plaintiff corrected THOMAS HALE's inaccuracies.

63. THOMAS HALE never responded to plaintiff

64. January 2026 –TENE BROOMFIELD Harassment Incident

65. On or about January 23, 2026, Plaintiff took a scheduled break and, upon returning, Defendant TENE BROOMFIELD was actively monitoring Plaintiff's status and

immediately began repeatedly questioning Plaintiff about her whereabouts and work status, despite Plaintiff having previously messaged that she was on break.

66. Defendant TENE BROOMFIELD continued to demand information about Plaintiff's location and activities every few minutes, interrupting Plaintiff's attempts to resume work.

67. Plaintiff attempted to resume work and informed Defendant TENE BROOMFIELD that she was on a customer call.

68. Defendant TENE BROOMFIELD continued to send repeated messages and directives, including questioning why Plaintiff was not working and demanding that Plaintiff change her status.

69. Plaintiff informed Defendant TENE BROOMFIELD that she was being harassed, yet, Defendant TENE BROOMFIELD continued to interrupt Plaintiff's work, reprimand her, and refuse to cease messaging.

70. As a result, Plaintiff was unable to complete the customer call and was forced to disconnect with customer

71. Approximately two minutes later, another manager joined the interaction and began asking

Plaintiff questions while Plaintiff was still on a customer call.

72. Plaintiff was simultaneously receiving repeated messages from Defendant SALLY

REAGAN and being questioned by the other manager, making it impossible for Plaintiff to continue providing services.

73. Plaintiff was forced to end the call, log out, and leave work.

74. Plaintiff reported the incident to Human Resources and the Ethics Board.

75. The conduct described herein is part of a continuous pattern of retaliation and interference, beginning with Plaintiff's protected disclosures, continuing through Defendant Hale's refusal to address the violations, and culminating in ongoing harassment and denial of advancement.

76. Despite multiple complaints about SALLY REAGAN's actions SALLY REAGAN remained in a managerial position over plaintiff.

77. Other managers exist and are/were available to supervise plaintiff

78. Intuit's failure to remove SALLY REAGAN as plaintiff's manager creates conflict of interest, furthers retaliation, creates a hostile work environment, and represents coordinated retaliatory conduct to harass plaintiff.

79. TENE Broomfield's actions furthers retaliation, create a hostile work environment, and represent conspiracy to harass plaintiff.

80. Intuit's selection of TENE Broomfield as plaintiff's manager furthers retaliation, create a hostile work environment, and represent conspiracy to harass plaintiff.

81. Intuit's failure to remove TENE Broomfield as plaintiff's manager, post multiple complaints to Intuit's ethical compliance and Intuit's management furthers retaliation, create a hostile work environment, and represent conspiracy to harass plaintiff.

82. Sally Reagan's managerial position over plaintiff was kept secret from plaintiff after plaintiff's disclosure of Sally Reagan's actions

83. On or about January 23, 2026 or Defendant agent TENE Broomfield intimidated and harassed plaintiff by advising plaintiff that she had reported and discussed her interactions with plaintiff with TENE Broomfield by advising that Sally Reagan was "on her side" and remained plaintiff's manager

84. Each incident is part of the same systemic problem and demonstrates Intuit's ongoing failure to correct regulatory violations and its continued retaliatory conduct against Plaintiff. 84-A. Broomfield's harassing behavior, consisting of inaccurate statements about plaintiff's conduct, and improper supervisory actions, are president and continue through present date.

85. Intuit had actual knowledge of the retaliatory conduct and interference described herein and failed to remedy or correct it.

86. By allowing these actions to continue, Intuit ratified and adopted the conduct as its-own, and is directly and vicariously liable for all damages caused by its agents and employees.

87. Following Plaintiff's protected disclosures, Defendants barred Plaintiff from consideration for available full-time and advancement positions for which she had been recruited and recommended.

88. Defendants' actions constituted retaliatory denial of advancement and professional opportunity.

89. Plaintiff suffered economic harm, loss of future earning capacity, and damage to her professional reputation as a result.

90. All causes of action described herein exceed the monetary jurisdictional limits of all lower

Courts.

AND FOR A FIRST CAUSE OF ACTION

Retaliation in Violation of New York Labor Law § 740

91. Plaintiff repeats and realleges preceding paragraphs, paragraphs 1 through 90 above as if fully stated herein

92. Plaintiff disclosed and objected to practices that violated IRS Circular 230 and New York Tax Law and that posed a substantial and specific risk to lawful tax administration and the public.

92-A. At all relevant times, Plaintiff reasonably believed that Defendants' conduct violated federal and New York tax law, and posed a specific and substantial danger to lawful tax administration, taxpayer protections, and integrity of the tax system.

93. Plaintiff's disclosures constituted protected activity under Labor Law § 740.

94. Plaintiff had a legitimate expectancy of continued employment and professional advancement, evidenced by Intuit's ongoing investment in Plaintiff's professional credentials, including payment for Plaintiff's New York law license, continuing legal

education (CLE) costs, and work-related professional tools and resources. Defendants' retaliatory denial of advancement and exclusion from full-time roles therefore caused significant economic harm and impairment to Plaintiff's professional standing.

95. Defendants took retaliatory action by denying Plaintiff advancement, barring her from fulltime employment opportunities, and obstructing her licensed professional duties.

96. Defendants' actions were taken by SALLY REAGAN while acting within the scope of their employment with Intuit, and Intuit is therefore vicariously liable for their retaliatory conduct.

97. Defendants' ongoing harassment and interference, including the January 23, 2026 incident, constitute continuing retaliatory conduct under Labor Law § 740.

98. There is a direct causal connection between Plaintiff's protected activity and Defendants' retaliatory actions.

98-A. Defendants retaliatory actions occurred shortly after Plaintiff protected disclosures and were motivated by those disclosures, establishing a direct causal connection under Labor Law sec. 740.

99. As a result of Defendants' retaliation, Plaintiff suffered damages, including-economic harm and loss of professional opportunity.

AS AND FOR A SECOND CAUSE OF ACTION

Tortious Interference with Prospective Economic Advantage

100. Plaintiff repeats and realleges preceding paragraphs, paragraphs 1 through 99 of this Complaint as if fully set forth herein.

101. At all times relevant, Plaintiff was duly licensed under the laws of the State of New York and lawfully engaged in the performance of professional duties requiring said license.

102. Plaintiff maintained a legitimate, non-speculative, and ongoing prospective economic relationship and expectancy arising from the lawful exercise of Plaintiff's licensed professional duties, including continued employment, advancement, compensation, and professional standing conditioned upon compliance with regulatory and licensing obligations.

103. Defendants had actual knowledge of Plaintiff's New York law license, Plaintiff's nondiscretionary professional obligations arising therefrom, and Plaintiff's ongoing prospective economic relationship and expectancy.

104. Notwithstanding such knowledge, Defendants intentionally and wrongfully interfered with Plaintiff's prospective economic advantage by engaging in conduct that was improper, unjustified, and independently wrongful under New York law.

105. Such wrongful conduct included, but was not limited to, harassment, coercion, obstruction of licensed professional activity, abuse of supervisory authority, and deliberate interference with Plaintiff's ability to comply with statutory and regulatory obligations.

106. Defendants' conduct was undertaken solely to interfere with Plaintiff's professional role and economic expectancy, or with knowledge that such interference was substantially certain to occur, and was not motivated by any legitimate business, managerial, or supervisory justification

106-A. Defendants' conduct was outside the scope of legitimate managerial discretion and was undertaken for retaliatory and improper purposes unrelated to INTUIT's business interests.

107. Defendants employed wrongful means within the meaning of New York law, including conduct violating public policy, regulatory mandates, and Plaintiff's legally protected professional duties.

108. As a direct and proximate result of Defendants' tortious interference, Plaintiff suffered actual damages, including but not limited to loss of income, loss of professional opportunity, impairment of professional standing, exposure to disciplinary risk, and loss of prospective economic advantage.

109. Defendants' conduct was willful, malicious, and undertaken in reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to compensatory damages and punitive damages under New York law.

THIRD CAUSE OF ACTION

Interference with Licensed Professional Duties

110. Plaintiff repeats and realleges preceding paragraphs, paragraphs 1 through 109 as if fully set forth herein.

111. Defendants intentionally interfered with Plaintiff's ability to perform duties requiring compliance with IRS Circular 230 and New York Tax Law.

112. Defendants' conduct deprived Plaintiff of the lawful ability to deliver professional services.

113. . SALLY REAGAN s and TENE BROOMFIELD's interference occurred while acting

within the scope of their employment with Intuit, and Intuit is therefore vicariously liable for their conduct.

114. Defendants' repeated interruptions and forced logouts prevented Plaintiff from fulfilling her non-discretionary professional obligations under IRS Circular 230 and New York Tax

Law, constituting ongoing interference with her licensed duties.

115. Plaintiff sustained damages as a result.

FOURTH CAUSE OF ACTION

Retaliatory Denial of Advancement

116. Plaintiff repeats and realleges preceding paragraphs, paragraphs 1 through 115 as if fully set forth herein.

117. Plaintiff was qualified for available advancement and full-time positions and was affirmatively recommended.

118. Defendants denied Plaintiff advancement in retaliation for her protected disclosures.

119. THOMAS HALE, in his capacity as a compliance officer and manager, acted within the scope of his employment with Intuit, and Intuit is therefore vicariously liable for his retaliatory denial of advancement.

120. Plaintiff suffered economic and professional harm.

FIFTH CAUSE OF ACTION

Corporate Ratification of Retaliatory Conduct

121. Plaintiff repeats and realleges preceding paragraphs paragraphs 1 through 120 as if fully set forth herein

122. Intuit, through senior management and compliance personnel, had notice of the retaliatory conduct and failed to correct it.

123. Intuit ratified the conduct by affirmatively enforcing the retaliatory restrictions.

124. Intuit is vicariously liable for the acts of SALLY REAGAN , CHARLES TITUS, THOMAS HALE, and TENE BROOMFIELD because those actions were taken within the scope of their employment with Intuit, under Intuit's direction and control, and for Intuit's benefit.

AS AND FOR SIXTH CAUSE OF ACTION

Negligent hiring, negligent training, negligent retention

125. Plaintiff repeats and realleges preceding paragraphs 1 through 124 above as if fully set forth herein.

126. INTUIT negligently hired Sally Reagan, Thomas Hale, Charles Titus, and TENE Broomfield

127. INTUIT Negligently trained Sally Reagan, Thomas Hale, Charles Titus, and TENE Broomfield

128. INTUIT negligently retained Sally Reagan, Thomas Hale, Charles Titus, and TENE Broomfield

129. INTUIT negligently supervised Sally Reagan, Thomas Hale, Charles Titus, and TENE Broomfield

130. INTUIT owes a duty to plaintiff as a employee of INTUIT to provide employee with fit and/or competent managers.

131. Sally Reagan, Thomas Hale, Charles Titus, and TENE Broomfield were unfit and were incompetent for the managerial positions.

131-A. Defendants' conduct included acts outside the scope of legitimate employment duties, including retaliatory harassment and interference with licensed professional obligations, supporting claims for negligent hiring, training, retention, and supervision.

132. INTUIT at all times herein relevant was aware that Sally Reagan, Thomas Hale, Charles Titus, and TENE Broomfield were unfit and were incompetent to manage INTUIT employees.

133. INTUIT at all times herein relevant should have been aware that Sally Reagan, Thomas Hale, Charles Titus, and TENE Broomfield were unfit and were incompetent to manage INTUIT employees.

134. INTUIT failed to take reasonable care in hiring Sally Reagan, Thomas Hale, Charles Titus, and TENE Broomfield.

135. INTUIT failed to take reasonable care in training Sally Reagan, Thomas Hale, Charles Titus, and TENE Broomfield.

136. INTUIT failed to take reasonable care in retaining Sally Reagan, Thomas Hale, Charles Titus, and TENE Broomfield.

137. INTUIT failed to take reasonable care in supervising Sally Reagan, Thomas Hale, Charles Titus, and TENE Broomfield.

138. INTUIT failure to take reasonable care in hiring, training, retaining, and supervising Sally Reagan, Thomas Hale, Charles Titus, and TENE Broomfield was a proximate cause of plaintiff's injuries.

139. Sally Reagan, Thomas Hale, Charles Titus, and TENE Broomfield unfitness and/or incompetence as INTUIT managers was a proximate cause of plaintiff's injuries.

140. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, statutory damages, costs and disbursements Plaintiff demands judgment on each cause of action in an amount that exceeds the monetary jurisdictional limits of all lower courts and such other relief as the Court deems just and proper.

DYLAN BRENNAN, ESQ

Attorney for Plaintiff

7 wildflower Drive

Ridge, NY 11961

Dated: February 8, 2026

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

-----------------------------------------------------------X

TONI BRENNAN, Index No.:

. Plaintiff, VERIFIED COMPLAINT

against-

INTUIT INC., and SALLY REAGAN, THOMAS HALE,

CHARLES TITUS, and TENE BROOMFIELD as agents of

INTUIT INC.

Defendants.

-----------------------------------------------------------X

I, Toni Brennan, residing at 7 Wildflower Drive, Ridge, New York 11961, pursuant to CPLR §2106, affirm the following:

1. I am the Plaintiff in the above-entitled action and am fully familiar with the facts and circumstances stated in the Complaint.

2. I have reviewed the Complaint and, to the best of my knowledge, information, and belief, the statements contained therein are true.

3. This Affirmation is submitted in support of the Complaint in this action.

I affirm under the penalties of perjury that the foregoing statements are true.

Dated: [Insert Date]

Ridge, New York

______________________________

Toni Brennan